Good morning. I would like to say that our convening court in Wilmington was out of my respect for my colleagues who are Wilmington based, and perhaps in part it was, but the primary reason was probably the key jinx of the Eagles because we feared that had they proceeded all the way to the Super Bowl there would have been a parade in Philadelphia today, but that is ancient history. All right, we'll proceed with our cases for today. The first case is J. Doroshow v. Hartford Life and Accident Insurance Company. At least we did get a third circuit picture. Yes, we did. Yes. May it please the court, my name is Scott Begley. I represent the appellant in this matter, J. Doroshow. I reserve three minutes of my time for the defense. Your Honors, in this case Hartford has the burden of proving that its pre-existing condition exclusion applies to J. Doroshow. In order to do that it must prove that Mr. Doroshow had ALS, also known as Lou Gehrig's disease, during the look-back period and in particular an office visit on May 16th of 2006. So you would urge that the condition that's referred to in the policy is categorically ALS as compared to motor neuron? Absolutely, and in support of that I believe the cases that I cited in my brief, Brown v. Continental and Swigert v. Continental, specifically makes distinctions between different medical conditions. In this case Hartford... Is it different medical conditions, Mr. Begley, or is ALS just one variety of motor neuron? ALS is just one variety of motor neuron disease, and in this case Hartford is a common form of motor neuron disease. To make that jump and assume that that is in fact what Mr. Doroshow suffered from on May 16th, when in fact he was diagnosed with that time with lumbosacral plexitis. There was no... Let me ask you a question about look-back period, which is in this case 12 months, is that correct? Three months. Why is it three months instead of 12 months? Because that's specifically what the policy states. Well, it says three months in the event of... For non-exempt, right? Exactly, non-exempt. That's correct, and Hartford, that's the only period of time that they looked at also. The only medical test or medical visit record that they relied on was the May 16th, 2006 office visit with Dr. Goldstein. That's the only thing that's mentioned in any one of their two denial letters in this case. Do we have anything in the record as to the relationship between motor neuron disease... Is it disorder? Disease. Motor neuron disease and ALS. In other words, you said it's the most common form. Is there anything in the record as to whether there are 63 forms of MND or whether 98% of MNDs or ALS, is there anything in the record about that? There is nothing in the record that specifies how many different forms of motor neuron disease there are. The reference to it being the most common form comes from a medical site that the defense counsel cited in its brief with regard to it being the most common form. I'm not here today... I think the district court put that in the footnotice. Yes, and I'm not here today to dispute that ALS is not a common form of motor neuron disease. What I'm saying is that this court cannot make the jump from the simple fact that ALS is a common form to assume that that is in fact what Mr. Doroshow suffered from on May 16th. There is no proof in the record that that's the condition he had. Well, that raises two questions. First, there is some proof in the record that he suffered that, although you're quick to point out that Hartford didn't rely on it. I mean, there is, during the look-back period, another note, right? A June 12th office visit from Dr. McCluskey that indicates that there was a more direct diagnosis. No, Your Honor. I respectfully submit that all that note cited was that, again, he had motor neuron disease and was being followed up from the earlier stroke. And those were the only two conditions that were cited in that note. That note did not say ALS. And the second question that I have then for you is, is this a, is this when you say make that jump, implicit in that statement and throughout your briefing is the assertion that this is a, it's a big leap from saying motor neuron disease to saying ALS. And the question that I have about that is, isn't that a lot closer than a leap? It seems that you're talking about a variety and the most common variety of a somewhat broader kind of physical condition. Isn't the purpose of the pre-existing condition clause to prevent somebody from having a disease and then claiming on it once it's been demonstrated that it's suspected that they have it? If that was the purpose, then we wouldn't have a situation where somebody who has been definitely diagnosed with the disease, but simply by fortuitously or deliberately avoiding treatment for a three-month period or whatever period the look-back period happens to be, is entitled to coverage. The Haley case that I cited, where the gentleman had specifically been diagnosed with ankylosing spondylitis. I mean, if that was the case, if any diagnosis could automatically bring about the pre-existing... Not any diagnosis. A diagnosis, I guess we're being asked whether this is close enough, right? And I respectfully submit that it is not. You cannot make that jump from MND to ALS. Because? Because you do not have a specific diagnosis or medical objective that that form of MND he had on May 16th was in fact ALS. And even if it was... The condition that he had back in 2005 and 2006, is that not, although it was not diagnosed at the time, is that not the same condition that was then diagnosed in July of 2005 as ALS? No, he was diagnosed on March 15th of 2007 as having ALS. But isn't that motor neuron disease the same condition which continued throughout that period? He did have a motor neuron disease. There's no question about it. Wasn't it the same motor neuron disease? That is not in the record, Your Honor. There's no evidence in the record. But again, what I would submit to you is even if this was ALS, let's assume for the sake of argument this was ALS on May 16th, then it was a misdiagnosis. It was misdiagnosed as lumbosacral plexitis. It was not a suspected condition without a confirmatory diagnosis. How can you say it wasn't a suspected diagnosis? Because... Don't the notes say things about MND throughout that period? Dr. McCluskey's note, as you just said a minute ago, and Dr. Goldstein's note. But again, you're talking about MND versus the specific form ALS. Right. They did not suspect ALS at any point prior to March of 2007. Maybe I've got a problem, Mr. Treger, but I thought that just a minute ago you said it was a misdiagnosis because they thought it was something other than MND. No. Maybe I misheard you. No, I'm sorry. I did not make myself clear. In May of 2006, it was diagnosed as lumbosacral plexitis. If the court wishes to assume that he had an MND and MND is close enough to ALS because ALS is a common form, then at most, the May 16th office visit was a misdiagnosis. ALS was not a suspected condition without a confirmatory diagnosis, as this court stated in the MacLeod case. I'm surprised it's taken you however long to get to MacLeod, and I'll ask your colleague about that, but it seems to me that the law in our circuit is that you have to have been given the advice or treatment for the condition. Absolutely. Absolutely. And here, the condition is not defined. Condition is not defined in the policy, correct? Correct. The key issue is what is the condition. Now, the district court said he was treated and given advice regarding ALS because they ruled out ALS. Correct. Whereas the actual statement by the doctor was motor neuron disease, lumbosacral plexitis is the most recent diagnosis. Was not felt to be ALS. Correct. Now, I'm just surprised you're not arguing MacLeod a little bit more forcefully as to, okay, what advice or treatment was he given for ALS? That's the second part of the diagnosis. He was told, you know, it was stated that it was not felt to be ALS. The second part of the analysis, Your Honors, is that he has to be given advice, not only have a condition, but given advice. For it. For it. For it. For it. And under MacLeod, there's an intentionality, correct? Not just for motor neuron disease, but for ALS itself. We all know what... What does Glenn have on MacLeod? Glenn? Yeah. In this particular case, it has... I mean, the use of discretion, the discretion of the insurance company to determine what the condition actually was. Does Glenn have an effect on the examination that the insurance company gives to the medical records to determine exactly what was a pre-existing condition and what was not? In this particular case, it does not. Because in the Cohen versus MetLife case that I cited in my brief, that court ruled in a similar situation that MetLife's action was arbitrary and capricious, even under the deferential standard. And I respectfully submit to Your Honors, when you have a situation, again, where someone with the diagnosis, by avoiding treatment for a three-month period, can still receive coverage. But somebody who's told during that same period of time they don't have the condition is denied coverage based on that so-called advice. Well, when you step back from that they don't have that condition, would you accept for purposes of argument that if we... And I'm not saying that we will. I'm just saying for purposes of discussion, if we were to say motor neuron disease was suspected, and in fact what he developed was the most common form of motor neuron disease, and therefore it was a suspected condition, would we under Glenn have to say, well, there's a basis, there's a rational basis for the decision that was made? No. Why? Because the advice has to be for ALS, not just for motor neuron disease. It has to be for ALS. So you won't accept the premise of my question because that's the undoing of your case, am I right? Yeah, the premise is the condition is MND as compared to ALS. That's correct. That's what Judge Jordan is positing. And again, there's no question that he had been diagnosed with MND at the time. But just because he has been diagnosed with an MND does not mean he received advice for What does condition mean? In the policy, it means the condition for which the disability is being alleged. On March 17, 2007, when he could no longer work and he applied for disability, and that was the condition, ALS, that was put on his disability form. That is the condition that Hartford looked back and had to find out, did he have any rendered during that look back period. That's what McCleod says. In Lawson, she wasn't treated for leukemia. Is that parallel? Although everything is different. It depends on what the policy says. Most of these cases have definitions. Condition is not defined here. That's correct. That's correct. This does not have the same definition that McCleod policy had. The policy that was an issue in the McCleod case. Condition is not defined. And if Hartford wanted to make it more specific, it easily could have done so. But in this case, again, the condition that resulted in the disability was ALS. Hartford has to demonstrate that Mr. Doroshow suffered from ALS during the look back period and received advice or treatment for ALS during the look back period. Indeed, he did not have lumbar plexitis. He had ALS. That is what was later determined. There is nothing in the record that talks about whether you can have lumbar plexitis and then that develops into ALS. Although there's something in the record about his having the upper limitations later on and hadn't had those before. That's correct. That's correct. And there's no medical evidence in this record that suggests that lumbar plexitis cannot then develop into an ALS form of motor neuron disease. And that is a critical absence in Hartford's case. And again, they want this court to jump back. Isn't it that he had motor neuron disease that developed into ALS? And its earlier manifestations, they weren't quite sure what it was. But ultimately, it was diagnosed as ALS. Well, I respectfully disagree with you in how you couched that. I respectfully submit that they believed it was a lumbar plexitis. But it was the same condition. It was a motor neuron disease. Over the years. Do we know or don't we know? A motor neuron disease which, again, exhibits many different symptoms, outward manifestations. And in the beginning, they were looking for certain upper neuron signs which were not present. And that's why they ruled out ALS. Well, I've got to make sure that I understand your factual position. I thought, but now I'm hearing something different. I thought that you, in your briefing and to a degree here today, had conceded that motor neuron disease was one of the things suspected during the look-back period. But that that was, as a legal matter, not good enough. Because ALS is what had to have been suspected. Have I got you correct? That's correct. That's correct. All right. Now, second question for you. And I apologize. No, that's fine. The Glenn case seems to be saying pretty directly the conflict that arises from being payor and decision-maker is a factor. That's correct. Okay. Are there any other factors? Because I haven't seen one, so I want you to point it out if there is one. that you can point us to that would lead us to say that this should be viewed on anything other than an arbitrary and capricious standard? No. And I'm comfortable with the arbitrary and capricious standard in this case. I'm not here to argue that we should have some higher sliding scale standard at this point in time. Based on the Cohen v. Metlife case, to me, that is exactly what I'm asking this court to find here. In Cohen v. Metlife, the district court found that Metlife was making assumptions not based on facts of record and was jumping to conclusions. And the very fact that they disallowed a negative diagnosis, in that case you had three office visits and you had a conversation between the primary care physician and a neurologist. And after the conversation and these three office visits, they concluded there was not enough evidence at that time to make a diagnosis of chronic fatigue syndrome. Several months later, they made a diagnosis of chronic fatigue syndrome. And the Metlife court said overruling, in effect, that negative diagnosis at that time was arbitrary and capricious under the most deferential standard because Metlife was assuming facts that were not in evidence. Here we have Hartford again asking this court to make the jump from a motor neuron disease to ALS. Specifically in the brief, they said Mr. Doroshow was on medication for motor neuron disease. They didn't even bother to look at the medical records and see that there was no evidence that he was on any medication for motor neuron disease. But I point you to the record of the opinion of Hartford here, the later opinion that denied coverage. They never considered that MND was a condition. They considered that ALS was a condition. That's correct. And said that he was provided advice related to the possibility of ALS on May 16th. So there was no determination by Hartford that we're talking about MND versus ALS at all. That's correct. But they read the language related to the possibility. That's correct. Without considering McLeod, which says you have to be treated for. All right. We have extended your time past and we will hear from you on the phone. Thank you. Good morning. May it please the court, Brian Downey and Pepper Hamilton on behalf of Hartford Life and Accident Insurance Company. In Hartford's determination that Mr. Doroshow is not entitled to long-term disability benefits because of his pre-existing motor neuron disease, specifically ALS, was neither arbitrary nor capricious and as the district court properly held, should be abided. All right. Specifically ALS. So you concede that or you agree that Hartford was correct when it made the determination that the condition we're looking at is ALS. Is that correct? No. I think the condition we're looking at is MND broadly, specifically ALS is the ultimate diagnosed condition for MND. Where did they? So the letter talks about ALS because that's ultimately the diagnosis. I mean their conclusion is based upon the fact that he was given advice related to the possibility of ALS. It says since Mr. Doroshow was provided advice related to the possibility of ALS on May 16th, which was during the three-month period and he's not insured due to his condition, I assume it's ALS, he is not eligible for benefits. So I mean we don't really have an issue here about whether we're talking about motor neuron disease versus ALS. They ruled it based upon the possibility of ALS, correct? Which is a form of motor neuron disease. Okay. So I think the parsing out that the plaintiff is trying to do here I don't think is right. I think what these records show is this. Well, let me back up. What's the condition? You have permitted, you're allowed to have an exception or there's an exception here if the condition, he's gotten advice or treatment for a condition, right? And Hartford determined that that condition was ALS. That's what's in their ruling. Isn't that right? His motor neuron disease is ultimately diagnosed as ALS. I think those are the same thing. But ALS is the condition we're talking about, isn't it? That's what you say. Related to the possibility of ALS due to his condition, ALS. Isn't that it? Well, if the question is does the term motor neuron disease mean something fundamentally different than ALS, the answer to that question is no. No, my question is what is the condition that we insert? I'm looking at 57 of the appendix where it says preexisting condition. It means a condition for which medical treatment or advice was rendered prescribed or recommended. And I'm pointing you to the fact that in Hartford's ruling denying him, he said it was related to the possibility of ALS and due to his condition meaning that ALS is the condition, isn't it? And if it's ambiguous, don't we construe it against you as to what condition it is? It's not ambiguous, Your Honor. Okay, so what's condition? What do we insert in there? It means a condition for which medical treatment or advice was rendered. His motor neuron disease, which is ultimately diagnosed as ALS. That's what it is. And we know, I mean, contrary to what his lawyer says, we know according to his own physicians, he's had ALS since 2004. The idea that Hartford made up that he had ALS is ridiculous. His own physician says the onset date for ALS is 2004. Beginning in 2005, there is no question in this record that people suspected he had ALS, that he was directed to take specific treatment, and then there's a back and forth between 2005 and 2007 as to whether his specific motor neuron disease is ALS. The problem I have is that Hartford's determination talked about advice relating to the possibility of ALS. The district court said that negating ALS is advice regarding ALS. My problem is that we have Third Circuit precedent, namely Lawson and McLeod, that says the word for in a policy requires intentionality, such that in Lawson, she had to have been treated for leukemia. And under McLeod, it was an abuse of discretion not to look at whether it was for, i.e. intentional, the condition. Here, under Hartford's determination talking about possibility, that determination does not consider our law as to what for means, nor did the district court totally disregarded what McLeod says for means. Here, for, to my mind, means for ALS. And he was treated not for ALS. In fact, the only record during that time period as to diagnosis says motor neuron disease, lumbar sacral plexitis is the current diagnosis, not felt to be ALS. What treatment or advice for, i.e. intentionally for, ALS was given to him during the look-back period? When the advice is you don't have ALS, so we're prescribing a certain course of treatment, based on the diagnosis that you don't have ALS, that's advice for ALS. Or intentionally for that disease. Absolutely. And what was that? Because what McLeod says, there's a prescription of ongoing medication. Continue all meds. Right. Because you don't have ALS. And so that is treatment or advice for the disease. Absolutely. Because what McLeod says, I mean there are two things about McLeod and Lawson that are important, and I would respectfully disagree with the way you characterize them. Number one, neither of those cases involves a traditional arbitrary and capricious standard of review. Lawson's not even an ERISA case, and McLeod used a sliding scale and ratcheted down the scale, and in McLeod says under a traditional arbitrary and capricious review, if we were using that and Hartford had a different explanation, we'd uphold that decision. In other words, post Glenn, McLeod might give us a different result. Number two, what McLeod says is that there is no requirement. The court is not imposing a requirement that there be a correct diagnosis made. But the way I think your argument would go, that would be flipped. In the court, you would have to have a correct diagnosis, and McLeod has rejected that. Lawson is the same way. So you do not agree with Mr. Fegley that Glenn had no effect on the McLeod standard? Glenn absolutely has an effect. Glenn eradicates the idea that the court should raise or lower the standard of review based on the existence of a conflict. Although it says, finding the Lawson analysis persuasive, we construe the term poor to contain the Lawson element of intentionality. Given that construction, Hartford's interpretation must be rejected at all events, and certainly when a heightened standard of review applies. It leaves open the issue as to whether under a different scale or test, it would be rejected in any event because they ignored Lawson. To my mind, there appears to be a failure to consider the intentionality requirement in the consideration thus far. I'm a little surprised that you're taking the position that saying you don't have ALS, so we're not treating you for ALS, is actually treating you for ALS. That seems to be logically a pretty tough spot to stake your claim on. I would have thought, and I read your briefing more in the line, that he had a motor neuron disease. That was discussed during the look-back period, and that is in the Hartford's letter. We looked on 86A of the appendix. The statement is, our review of all the medical information in your claim file shows that you are claiming benefits because of symptoms related to motor neuron disease, which includes ALS. Now, are you abandoning the position that he was denied on the basis that he had an MND, and the diagnosis of an MND is indeed close enough to constitute the suspected prong of the Lawson-McLeod cases, and staking your claim on ALS, saying you don't have ALS, and giving you drugs for something other than ALS is really treating for ALS? No, Your Honor, not at all. And I don't think I said that. If I did, what I was really trying to do was to persuade Dr. Endell here about your, the way you summarized it is exactly the position we're taking. We're not talking about treatment for ALS. It is advice for ALS. Advice or treatment for ALS. Or an MND. You can't have it both ways. That's the point of this discussion. Your opponent says it's got to be ALS. If it's not ALS, then we win. If you're saying, yeah, it's ALS, then it seems to me like you're marching on his side of the field. I'm just trying to get you to tell us, and that's okay. I'm not telling you what position you have to take. I just want to know what it is. No, Your Honor, I apparently have not been as artful as I meant to be, so let me try to be as direct as I can be. If he received advice or treatment related to a motor neuron disease during the look-back period, then his claim is subject to exclusion. And his particular motor neuron disease was ultimately diagnosed with ALS? Are you arguing that related to is the same thing as for? No, I don't think they are. All right, well, you just said related to. It is certainly advice for a motor neuron disease. I mean, there's no question in this record that Mr. Dorshow had ALS, that ALS is the most common form of motor neuron disease, that during the look-back period he went to a doctor and received advice related to a motor neuron disease for a motor neuron disease, let me be more precise, for a motor neuron disease, that at the time the doctor specifically gave advice for the motor neuron disease based on the idea that he did not think it was ALS, which is what McLeod says is okay, and Lawson says the same thing. What Lawson says, if you look at the way Lawson discusses cases like Curry, what Lawson says is that you end up in a different result if you have a suspected condition. And that's why, like, Cecchinichio, McLeod, Lawson all have the same basic fact pattern, which is nobody has any idea, nobody even ever suspects that the condition that's ultimately disabled is something that the person is suffering from during the look-back period. Well, it seems to me we get back to the very first question I asked, which is what is the condition we're talking about here? And the condition is not defined in the policy. Should we not, therefore, construe any ambiguity, which I think there is here. I mean, the first letter from Hartford talked about MND. The second letter talked about ALS. It seems like even Hartford was confused as to exactly what the condition is. Should we not construe the concept of condition against you and in favor of the insured here? No. Why not? And the reason is because under Glenn and under the traditional arbitration standard, Hartford has the right to determine, I'm sorry, to construe the terms of the policy. So the question is not, should this be construed against Hartford? The question is, was it arbitrary and capricious for Hartford to construe it this way? And what we know from the district court's opinion is, of course it wasn't. What Mr. Doroshow's ultimate argument is, is that you could, if you use Wikipedia or if you use some other definition, you could reach a different result. That may or may not be true. But that's not arbitrary and capricious. Glenn talks about other factors, that the strict standard of Pinto is no longer standard, but there are other factors that one can consider in determining and in reviewing what the insurance company administering the plan has done. One of them, for instance, is whether the person making the benefit decisions to award or not award benefits are in any way involved in financial workings of the insurer or are aware of the financial circumstances. Is there anything in the record that is helpful in that regard? There is nothing in the record that even begins to suggest that the people who are involved in this discussion There's nothing one way or the other, is there? Right, and the burden is on the plaintiff in this case to prove that it's arbitrary and capricious. And there's no record at all that that conflict in any way plays a role in the determination. And this determination is entirely consistent with the governing precedent. And this circuit has held over and over that where there is no suspicion at all that an ultimately disabling condition is something the person might be suffering from, that it's arbitrary and capricious or otherwise improper in the non-ERISA context for an insurance company to apply a pre-existing condition exclusion under those circumstances. That's not the case we have here. Here people have been looking at whether he had ALS long before the pre-existing condition period occurred. He went to a doctor who specifically talks about ALS in the record. Talks about it but negates it. Tells him he doesn't have it. It seems a real Alice in Wonderland world for you to say, hey, you don't have this, therefore you can say he was being treated for the thing they told him he didn't have. No, he's getting advice for it. He's getting advice for the MND and he's getting treatment for the MND. He's getting specific for a specific form of MND. He's getting advice related to ALS. You can't say I go to a doctor and the doctor says you don't have this, that I'm not receiving advice for that condition. Is it arbitrary and capricious for the insurance company to review medical records from before the look-back period to understand what is going on during the look-back period? No, I think the insurance company is charged with reviewing whatever records are made part of the administrative record. And, of course, Mr. Doroshow has much more control over what goes into his administrative record than does anyone else. So can the interpretation of the records in the three-month look-back period be influenced by pre-existing medical records when Hartford makes its decision? I think it would be influenced only to the extent that they place those records in context. As with any medical condition, starting at the beginning of the medical records and working up to the end, you may be focused on a particular period, but to understand what that condition is or what those records mean or what they're talking about, I think you need to look at all the records. Which determination of Hartford was reviewed by the district court? The ultimate one? Yes, and that's the one that's before this court. It's the December 2007, in terms of ALS. Right, but the problem is they're not distinct. I think it would be a mistake to say that they are different from one another because usually if you look at that letter, it's going to talk about its prior determination. So you need to read them in tandem, but the decision before the court in any case like this is always the final decision. Well, I'm not sure where that leaves you. It seems that in the December letter, there was a good deal more focus on ALS. In the August letter, the statement is, as I quoted it, you're being denied benefits because of symptoms related to motor neuron disease and then a reference to ALS. So on this review, what do we look at? Do we look at the August letter as well as the December letter? Are we limited to the December letter? What's our obligation? Your obligation is obviously to look at the record as a whole and determine whether it's arbitrary and capricious, but as I was saying, the final determination is the December one, but you read them in tandem because they incorporate each other. The latter one essentially incorporates the former. In a case like this, these are tough cases. Nobody likes these cases. Truthfully, nobody does. But in a case like this where it's undisputed that this person has a motor neuron disease, it's undisputed, at least in the record. His lawyer may dispute it, but his doctors don't. But his record is that he had ALS at that time. Well, but I don't think we know that for sure because later on there was a reference to his suddenly having the upper extremity problems appear. And if we take the district court's footnote at face value talking about how many things you have to have, there's nothing to my mind that showed he had the real telltale signs of ALS prior to a later time where the upper difficulties appeared. I can only tell you his neurologist disagrees because if you look in the record when he's asked the question, what's the condition of ALS, what's the date of the onset of this condition, he says June of 2004. I'm not a neurologist. That comes out of the blue. Well, maybe. 6-04, maybe it was June 4th of a certain year. I don't know. But I think what we can't do is say it's arbitrary and capricious for a claims administrator to accept what a treating physician says is the date of the onset of a condition when it's otherwise undisputed. This isn't a case where, as you sometimes have, a dispute between a treating physician or an independent reviewing physician about issues like the date of onset. This is uncontested, at least in the medical records, uncontested that he had ALS in June of 2004, that ALS is the most common form of these motor neurone diseases, that he got treatment for it, he got advice for his motor neurone disease during the look-back period. He's not entitled to benefit. Thank you very much. Your Honors, I believe that Hartford did specifically focus in on ALS, and that's clear from its denial letters. It's also clear from the fact that there was that second visit on June 12th of 2006 in which MND is just noted as a stable condition. Hartford didn't rely on that. How can you say they didn't rely on it when the August letter denying it says expressly you're being, quote, denied, it shows you are, quote, claiming benefits because of symptoms related to motor neurone disease, which include ALS. Because in that specific letter, all it discusses is Dr. Goldstein's May 16th, 2006 note. Yeah, but doesn't that tell us in plain English, we understand your claim to be related to symptoms dealing with MND, and that's the basis on which we're approaching it. No, I believe that they're focusing in on the May 16th note. The May 16th note did say MND, not thought to be ALS. Right. And then in the later letter, they focus solely again on the May 16th note and say specifically ALS, and this June note never comes up at all in either one of their letters. No argument about that. I'm just puzzled by your assertion that they never based this on MND. But, again, maybe I misheard your argument. They base it on ALS being a form of MND, but it is my submission to this court that what the condition is, as Judge Randell has expressed, is ALS, not MND. They're not denying benefits solely because Mr. Dorshow had an MND on May 16th, 2006. They denied benefits because he had ALS, and that is, in fact, what the disabling condition was. Not MND, not any form of MND, because there are forms of MND which are not disabling.  It was a form of MND, right? It was ALS. It was ALS, a form of MND that was disabling. And with regard to the onset, in McLeod, this court stated that onset dates that are given with hindsight are not something that the court is going to rely on. And the same thing in the Cohen v. MetLife case. An onset date in an application for disability records given with hindsight, after looking back at years of symptoms, is not something that is given reliance upon. With regard to Judge Roth's comment, with regard to the Glenn Standard, I'm not saying that Glenn does not have an effect on prior precedent with regard to the standard of review. What I'm saying in this case is I'm comfortable standing on the arbitrary and capricious deferential standard based on the decision in Cohen v. MetLife. And again, that is as close a case as you've got to what we have here. You have doctors discussing a particular condition and saying, he doesn't have it, he doesn't have it. And you have the insurance company saying, you know, okay, we don't care because we see the other surrounding circumstances. We see an application where they gave an onset date of two or three years ago. And we're going to look at this overall and we're going to disregard that negative diagnosis. But if you're looking at those past records, there are also past records that indicate that he did have ALS. No. There is nothing in the medical records at all which says. Yes, there is. No, there's nothing in the medical records which diagnoses Mr. Dorshow with ALS. Not diagnoses, but discusses the MND and the symptoms and how those symptoms relate to motor neuron disease and, more specifically, ALS. In 2005, they considered it and they tested him for it. The testing was negative and they said from that point forward, he does not have ALS. But that does not mean that the symptoms that he has are not developing into ALS because it's a related disease. It's different than the cloud where you're treated for an upper respiratory infection and it turns out that you have leukemia. In Brown versus Continental Casualty, the court said that you have a situation. You're asking for the same type of ex post facto analysis. You can have a situation where you have somebody diagnosed with fibromyalgia and then later they apply for disability based on chronic fatigue syndrome. And because there's so much similarity in terms of the symptoms and the medical record that you would be- But we aren't talking here about similarity of symptoms. We're talking here about a category of disease, motor neuron disease, from which ALS may develop and where the early symptoms are consistent with ALS. But what the court is doing is that assuming that because he was diagnosed on May 15th or March 15th, 2007 with ALS, that everything leading up to that point now has to be ALS. Well, the issue was Hartford arbitrary and capricious in saying everything leading up was consistent with ALS. Yes, I believe it was. And that is the determination we have to make. You're saying that they were. Your opponent is saying that they weren't. And that is the decision that we're going to have to make. And we have heard you on your point of view. I take it my time's up. I think it is. Thank you very much. Thank you very much. The argument was very helpful. We'll take the case under advisement.